UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **IRMA GOREE** | **CASE NO. 3:24-CV-00637** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF BASTROP ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 9] filed by Defendants, Captain Gerald Givens ("Capt. Givens") and the City of Bastrop (the "City") through its mayor, Betty Alford-Olive (collectively, "Defendants"). Plaintiff, Irma Goree ("Plaintiff") filed an Opposition to the Motion [Doc. No. 14], and Defendants filed a Reply [Doc. No. 15].

For the reasons set forth below, the Motion is **GRANTED.**

### I.  FACTS AND PROCEDURAL BACKGROUND

This is an excessive force case brought by Plaintiff, the mother and surviving parent of Teston Tremaine Goree ("Mr. Goree"), against Capt. Givens, individually and in his official capacity as an employee of the Bastrop Police Department, the City, and XYZ Insurance Company. [Doc. No. 1].

On or about May 18, 2023, Capt. Givens and Detective Brixey ("Det. Brixey") received a call about a stabbing incident. [Doc. No. 9-4]. The victim was taken to a local hospital, where he identified Mr. Goree as the perpetrator. [*Id.* at 2]. Soon after identification, Capt. Givens and Det. Brixey sent an alert over the radio regarding Mr. Goree's whereabouts. [*Id.*]. Captain Wages ("Capt. Wages") located Mr. Goree sitting on the steps at Missionary Baptist Church in Bastrop, Louisiana. [*Id.*]. Not long after, Capt. Givens and Det. Brixey entered the parking lot. [*Id.*]. The officer's body camera footage captured all of what followed. [Doc. No. 9-6, Ex. D]. Capt. Wages,

1

Capt. Givens, and Det. Brixey exited their units and Capt. Givens repeatedly ordered Mr. Goree to get on the ground with his hands spread out by his side. [*Id.*]. Capt. Givens advised Mr. Goree he was under arrest for attempted second-degree murder. [*Id.*]. Mr. Goree initially complied with the commands for approximately forty-three (43) seconds. [Doc. No. 9-6, Ex. A]. Det. Brixey and Capt. Wages began to approach Mr. Goree from the sides, while Capt. Givens walked directly in front of Mr. Goree. [*Id.*]. Mr. Goree leaped from his laying position and began charging with a knife at Capt. Givens, who was retreating backward. [*Id*]. Capt. Givens yelled for Det. Brixey to taze Mr. Goree, but as the video reveals, Mr. Goree was nearly on Capt. Givens' person by that point. Thus, Capt. Givens discharged gunfire on Mr. Goree. [*Id.*] Mr. Goree was pronounced dead at the scene. [Doc. No. 9-3].

Capt. Wages can be heard notifying other officers that shots were fired. [Doc. No. 9-6, Ex. E]. Capt. Givens is also heard saying repeatedly that Mr. Goree was trying to kill him. [Doc. No. 9-6, Ex. A].

The Bastrop Police Department's manual (the "Policy") includes an order regarding an officer's use of deadly force. [Doc. No. 9-2]. The Policy specifically states:

> A. Officers shall employ deadly force only in defense of their own lives or in defense of the life of another person. It is essential that the officer reasonably believes that he or some other person is in immediate danger of suffering death or great bodily harm and that the use of force is the only prudent preventative measure available to him or her.
>
> B. Deadly force shall not be justified merely in the protection of property or in the prevention of escape by a prisoner or felon, unless the standard set forth in item "A.", above, is met.
>
> C. A report shall be submitted whenever an officer takes an action that results in (or is alleged to result in) injury or death of another person.

*Id.*

On August 20, 2024, Defendants filed the pending motion. [Doc. No. 9]. Defendants argue that Plaintiff's excessive force claim, *Monell* claim, and state law claims should be dismissed. Defendants assert that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law because of the qualified immunity doctrine and obvious justification regarding Capt. Givens' actions. *Id*. While Plaintiff's Opposition is slim on its argument, the Court assumes it is Plaintiff's position that Capt. Givens used unreasonable and unnecessary force on Mr. Goree. [Doc. No. 14].

The issues have been briefed and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under FED. R. CIV. P. 56(a), the court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little*

3

*v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (cleaned up).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (cleaned up). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). However, "when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should view the facts in the light depicted by the videotape." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (cleaned up).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### A. Excessive Force Claim

#### a. Qualified Immunity Standard

42 U.S.C. § 1983 provides a federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of state law. Section 1983 does not itself create substantive rights; rather, it merely provides remedies for rights guaranteed to citizens by the United States Constitution or other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S.

808, 816 (1985). The doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While qualified immunity is technically an affirmative defense, once it has been raised, it is the plaintiff's burden to negate the defense. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

Establishing qualified immunity requires a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Id*. Second, if a violation has been established, the court must determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. *Id*.; *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Whether an official's conduct was objectively reasonable is a question of law to be decided by the court. See *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (citing *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).

Therefore, the Court must consider whether, viewing all facts in the light most favorable to Plaintiff, the actions of Capt. Givens violated Mr. Goree's right to be free from excessive force. If Plaintiff establishes a violation, the Court will then analyze whether the right was clearly established at the time of the alleged misconduct.

### b. Constitutional Violation

The claim against Capt. Givens relies on the Fourth Amendment, which protects the right to be free from excessive force during a seizure. "A violation of this right occurs when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). Determining whether force was excessive or unreasonable is a "necessarily fact-intensive" and case-specific inquiry. *Poole*, 691 F.3d at 628. The test for reasonableness is "not capable of precise definition or mechanical application." *Graham,* 490 U.S. at 396. Courts must consider (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.*

Not only does the Court assess the need for force, but also the degree of force. While "a suspect's refusal to comply with instructions" may indicate that physical force is justified, officers must also select the appropriate "degree of force." *Joseph on behalf of Estate of Joseph*, 981 F.3d at 332 (quoting *Deville v. Marcantel,* 567 F.3d 156, 157 (5th Cir. 2009)). In determining the degree of force to use, the officer must assess the suspect's passive resistance versus active resistance. *Id.*

The parties agree that Capt. Givens used deadly force on Mr. Goree in the instant case. In determining if the use of deadly force was reasonable, the Court must consider the *Graham* factors, which include the severity of the crime at issue, whether Mr. Goree posed an immediate threat to the safety of the officers or others, and whether Mr. Goree was actively resisting arrest or attempting to evade arrest by flight.

As to the first *Graham* factor, Defendants argue that it weighs in their favor because Capt. Givens sought to arrest Mr. Goree for attempted second-degree murder. Although Mr. Goree was

only wanted for an attempt, the Fifth Circuit has held that second-degree murder is "undoubtedly one of the most severe offenses," thus satisfying the first *Graham* factor. *Smith v. Lee*, 73 F.4th 376, 385 (5th Cir. 2023). This Court finds the same and believes this factor weighs in favor of Defendants.

The second factor, whether Mr. Goree posed an immediate threat to public safety, is also satisfied here. Mr. Goree had just carried out a stabbing crime that warranted the hospitalization of his victim. It was reasonable to believe that Mr. Goree likely was armed and dangerous and although Mr. Goree initially complied with the officers' commands, as soon as the officers began approaching, Mr. Goree launched himself directly at Capt. Givens with a knife. *See Smith,* 73 F.4th at 385 (weighing in favor of police on the second factor because the officers reasonably believed arrestee was armed). In *Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 284 (5th Cir. 2019), the Fifth Circuit agreed with the district court that it was immaterial whether Mr. Shepherd's knife was over his head or by his side as there was ample reason to conclude that Mr. Shepherd posed a real threat of serious bodily harm to the officer. Thus, the Court found that the officer's use of deadly force was reasonable. *Id*. This Court agrees and finds that the second factor weighs against Plaintiff.

As to the third factor, resistance, Defendants argue that "Mr. Goree was actively resisting his arrest by refusing to comply with the officers' orders to lay on the ground when he chose to move towards Capt. Givens with a knife in hand." [Doc. No. 14, p. 9]. Plaintiff offers little argument in Opposition but seemingly asserts that a reasonable jury could find that Mr. Goree was not advancing on Capt. Givens' person. The video shows that Mr. Goree clearly ran toward Capt. Givens with a knife in hand, despite several other avenues of escape, if he indeed was attempting to flee. [Doc. No. 9-6, Ex. E]. Not only was Mr. Goree actively resisting, but he was also actively

7

pursuing Capt. Givens. *Id.* In *Shepherd*, the Fifth Circuit found that Mr. Shepherd was actively advancing down the driveway at a relatively quick speed towards the officer when he was shot at ten feet. 920 F.3d at 284. Here, the video clearly shows Mr. Goree advancing on Capt. Givens and being nearly an arm's length away. The facts are substantially like *Shepherd*, except that in this case, Mr. Goree was closer to Capt. Givens when the shots were fired. Therefore, this factor also weighs against Plaintiff.

Alternatively, Capt. Givens is entitled to qualified immunity. Again, Plaintiff offers little argument on qualified immunity, but the Court assumes Plaintiff believes that Capt. Givens is not entitled to qualified immunity because the constitutional right to be free of deadly force is clearly established. Such arguments lack the specificity needed to survive a motion for summary judgment as the burden is on the Plaintiff to rebut the defense. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Caselaw at the time of the shooting [] has not clearly established that it violates the Constitution for a police officer to shoot someone who is behaving erratically, advancing toward the police officer with a knife in his hand, and disregarding a command to get back. Indeed, case law supports the opposite conclusion." *Shepherd*, 920 F.3d 278, 285; *see, e.g.*, *Kisela v. Hughes*, 138 S.Ct. 1148, 1150–55 (2018) (holding that an officer's use of deadly force did not portray excessiveness and thus, was not clearly established when used against someone who continuously ignored demands to drop the knife and continued to approach a bystander); *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (ruling no excessive force when the individual "ignored repeated instructions to put down the knife, ... [was] in close proximity to [the officer], and [was] moving closer").

The Court's conclusion regarding the *Graham* factors is supported by Fifth Circuit case law as revealed in *Shepherd* and *Clayton v. Columbia Cas. Co*., 547 Fed. App'x. 645 (5th Cir.

2013). In *Clayton*, the Fifth Circuit affirmed the district court's summary judgment in favor of Deputy Johnson. 547 F. App'x at 645. The district court had concluded Deputy Johnson's "use of deadly force was justified by the presence of an immediate threat of serious harm or death to himself or others and, therefore, did not violate the Fourth Amendment, irrespective of whether Clayton held a knife at the moment the Deputy shot him; and, in the alternative, if the Deputy's conduct violated the Fourth Amendment, a reasonable officer in his position would not have known the use of deadly force was unlawful in the light of clearly-established law, vesting the Deputy with qualified immunity." *Id.* at 648. The Fifth Circuit noted that the deputy faced a threat of immediate harm and was justified in his use of deadly force when confronted with the following:

> [A]n individual who attacked his girlfriend with a metal bar, damaged her vehicle, and injured himself with a knife; his sister, Burke, threatened to shoot him; Clayton claimed he had a gun; he threatened to shoot the Deputy; he continued to "holler" and failed to obey the Deputy's orders to stop; he continued to walk toward the Deputy, causing him to move back toward Burke's house, even though the Deputy had a gun pointed at him; and the Deputy stood between Clayton and the victim, and other innocent bystanders.

*Id.* at 650. The Fifth Circuit further held that Deputy Johnson was entitled to qualified immunity even if there was no knife. *See id.* at 652.

Here, when looking at both the "moment of the threat" that resulted in Capt. Givens' use of deadly force and the totality of the circumstances, it is clear from the summary judgment evidence—namely the body camera footage—that Mr. Goree was armed, in close proximity to Capt. Givens, and continuing to move toward Capt. Givens despite being told to "lay down." [Doc. No. 9-6, Ex. A]. Under these circumstances, Capt. Givens reasonably feared for his safety and the safety of others at the moment of the fatal shooting. Likewise, Capt. Givens was reasonable in his belief that Mr. Goree posed a threat of serious harm to him and others on the scene. Summary

9

judgment in favor of Capt. Givens is granted and Plaintiff's § 1983 excessive force claim is dismissed with prejudice.

Thus, summary judgment is granted as to Plaintiff's excessive force claims against Capt. Givens because there is no genuine issue of material fact as to a constitutional violation. Alternatively, Capt. Givens is entitled to qualified immunity.

### B. *Monell* Claims Against the City

Plaintiff alleged § 1983 municipal liability claims against the City based on failure to train and supervise its officers. Under § 1983, municipal liability generally requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)).

Plaintiff's *Monell* claims against the City fail as a matter of law because there was no underlying violation of Mr. Goree's constitutional rights. *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (noting that because there was no constitutional violation, there can be no *Monell* claims); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that claims against the county and the officers in their official capacities failed because the plaintiff failed to demonstrate an underlying constitutional violation); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014) (upholding the district court's dismissal of the *Monell* claims because the plaintiffs had not shown there was a constitutional violation).

Thus, due to the absence of genuine issue of material facts as to Plaintiff's § 1983 claim against the City, the claim must be dismissed.

### C. State Law Claims

Plaintiff has alleged negligence claims for excessive force under Louisiana Civil Code 2315. [Doc. No. 1]. Defendants assert that Capt. Givens acted in accordance with Louisiana state law's duty of reasonableness. [Doc. No. 9, p. 13].

For Plaintiff to recover under state law she "must show that (1) the [d]efendants' conduct was the cause in fact of the harm, (2) the defendants owed a duty of care to [Mr. Goree], (3) the duty was breached, and (4) the risk was in the scope of harm afforded by the duty." *Batiste v. Theriot*, 458 F. App'x 351, 360 (5th Cir. 2012). The reasonableness test is based upon the text of the Fourth Amendment. *Scott v. City of Mandeville*, 69 F.4th 249, 258 (5th Cir. 2023). To determine the reasonableness of the force used and to determine if a duty was breached, Louisiana law looks at a number of factors: (1) the known character of the arrestee, (2) the risks or dangers faced by the officers, (3) the nature of the offense, (4) the chance of escape if that means of force is not employed, (5) the existence of alternative methods of arrest, (6) the physical strength, size and weaponry of the officers as compared to the arrestee, and (7) the exigencies of the moment. *Kyle v. City of New Orleans*, 353 So.2d 969, 973 (La. 1977). The *Kyle* factors are substantially similar to the *Graham* factors; thus Plaintiff's state law claim fares no better than her § 1983 excessive force claim.

The first *Kyle* factor weighs in favor of Defendants. In this case, prior to the officer's arrival on the scene, Capt. Givens was aware that Mr. Goree was potentially armed with a knife as he had just carried out a stabbing attack and was wanted for attempted second-degree murder. Upon arrival, Mr. Goree was clearly carrying the knife. Capt. Givens therefore knew that Mr. Goree was armed and wanted for criminal conduct.

11

The second *Kyle* factor weighs in favor of Defendants. Here, Capt. Givens knew Mr. Goree was awake and armed with a knife. Additionally, as Capt. Givens was walking near Mr. Goree to place him under arrest, Mr. Goree launched himself at Capt. Givens while wielding the knife. The risk of serious bodily harm outweighed the duty of avoiding deadly force. As heard in the video, Capt. Givens initially yelled for other officers to taze Mr. Goree, however, it is arguable, if not certain, that waiting even a few more seconds would have caused Capt. Givens great bodily harm as Mr. Goree was an arm's length away at that point.

The third *Kyle* factor weighs in favor of Defendants— Mr. Goree was wanted for attempted second-degree murder which is a violent offense in the state of Louisiana.

The fourth *Kyle* factor weighs in favor of Defendants. It is likely that if Mr. Goree had been successful at his attempt to stab Capt. Givens, he likely could have escaped the other two officers.

The fifth *Kyle* factor weighs in favor of Defendants. Considering the circumstances, Capt. Givens approached Mr. Goree in a reasonable manner. Capt. Givens began walking toward Mr. Goree at gunpoint but demanded Mr. Goree to lie down numerous times. Despite Capt. Givens commands, Mr. Goree attempted to make physical contact with Capt. Givens. As stated earlier in the ruling, notwithstanding Capt. Givens' attempt to taze Mr. Goree, Mr. Goree was already in close proximity to Capt. Givens wielding the knife, thus no other alternative as to disarming Mr. Goree existed then. Moreover, "the existence of other available alternative methods does not, in and of itself, render the method chosen *unreasonable.*" *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 324 (La. 11/30/94).

The sixth *Kyle* factor favors neither Plaintiff nor Defendants. In this instance, the suspect was outnumbered three to one. The officers were standing in a triangular shape, with Capt. Givens at one point of the triangle attempting to approach Mr. Goree. However, Mr. Goree was armed, so

12

while the officers benefitted from a tactical standpoint, they also faced an armed suspect who was refusing to obey orders. *Id.*

The seventh *Kyle* factor weighs in favor of Defendants. It is clear from the video that the situation escalated rapidly. Capt. Wages and Det. Brixey were seemingly putting away their weapons when Mr. Goree decided to charge at Capt. Givens in a matter of seconds. As Capt. Givens was retracting and Mr. Goree was still approaching, Capt. Givens was required to react quickly after commanding Mr. Goree to stop numerous times.

Because Capt. Givens was confronted with a situation that required him to approach and initiate contact with a dangerous suspect, he was only required to choose a course of action within that range identified as "reasonable." Capt. Givens had to make a quick decision under extremely charged circumstances. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 57, 582 (5th Cir. 2009). Thus, after carefully considering the evidence in the record and in light of the factors enunciated in *Kyle,* the Court finds that the specific method used by Capt. Givens to approach and diffuse the situation with Mr. Goree cannot be held to be unreasonable.

Accordingly, summary judgment is granted as to Plaintiff's state law claims and such claims are dismissed with prejudice.

### D. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Defendants' Motion for Summary Judgment [Doc. No. 8] is **GRANTED** as to all of Plaintiff's claims and they are accordingly **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA, this 29th day of January 2025.

_____
**TERRY A. DOUGHTY, JUDGE
UNITED STATES DISTRICT COURT**